IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SHERI LYNN SMITH n/k/a<br>CHARLI ROSE NICHOLS,<br><br>　　Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK N.A.,<br><br>　　Defendant,<br><br>v.<br><br>JEFFREY DONALD SMITH,<br><br>　　Third-Party Defendant. | §§§§§§§§§§§§§§§§§§ | No. 3:19-cv-02406-X-BT |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court in this removed civil action is Defendant Wells Fargo Bank N.A.'s Motion for Summary Judgment (ECF No. 38). For the following reasons, the Court should GRANT the Motion and enter a final judgment for an order authorizing Wells Fargo to foreclose on the property at issue.

## Background

Because this is the fourth lawsuit Plaintiff Sheri Lynn Smith n/k/a Charli Rose Nichols (Nichols) has filed to prevent the foreclosure of her home, the Court recites only the facts that are pertinent to resolving the pending motion.[1]

---

[1] *See Nichols v. Wells Fargo Bank, N.A.*, 3:18-cv-02184-B; *Nichols v. Wells Fargo Bank, N.A.*, 3:17-cv-02096-M-BH; *Nichols v. Wells Fargo Bank, N.A.*, 3:16-cv-02654.

1

On November 20, 2002, Nichols and her then-husband Jeffrey Donald Smith (together "Borrowers") purchased a home in Rowlett, Texas (the "Property") using proceeds from a mortgage loan (the "Loan") obtained from Washington Mutual Bank, F.A. (the "Original Lender"). Def.'s Br. 5, 8 (ECF No. 39); Pl.'s Resp. 2 (ECF No. 41). The Borrowers concurrently executed a note (the "Note") and a Deed of Trust (the "DOT") granting a security interest in favor of the Original Lender. Def.'s Br. 8; 9-10 Def.'s App., Ex. A-1 (Note) (ECF No. 40); 12-19 Def.'s App., Ex. A-2 (DOT); Pl.'s Resp. 2. Four years later, on December 11, 2016, the Original Lender transferred the Loan to Wells Fargo. Def.'s Br. 8; 25 Def.'s App., Ex. A-3 (Assignment); Pl.'s Resp. 2. Wells Fargo is the current holder of the Note and beneficiary of the DOT; it is also the servicer on the Loan. 5 Def.'s App., Ex. A (Penno Declaration).

The Note's terms require the Borrowers to pay principal and interest on the first of each month. Note 9. The Note also provides that if the Borrowers fail to make payments as they become due, the maturity date of the Note accelerates, and the remaining unpaid balance becomes immediately payable in full. *Id.* at 10. The DOT similarly provides for the payment of principal and interest and any late fees on the debt evidenced in the Note, as well as authorization for acceleration of the maturity date of the Note and foreclosure of the Property if the Borrowers default. DOT 13-16, 18.

Nichols and Smith divorced in 2010. Am. Compl. 2 (ECF No. 30); Def.'s Br. 8. In the divorce proceedings, the state court issued an Agreed Decree of Divorce

("Divorce Decree") awarding the Property to Nichols and requiring her to pay the indebtedness of the Note. Am. Compl. 2; Def.'s Br. 8; 407, 411 Def.'s App., Ex. D (Divorce Decree). Nichols thereafter allegedly "explored options to refinance in order to remove [Smith] from the loan per the terms of the divorce decree." Am. Compl. 2. In November 2014, she recorded a DOT to Secure Assumption and a Special Warranty Deed purportedly executed by Smith.[2] Am. Compl. 2-3; Def.'s Br. 8. Wells Fargo sent correspondence to Nichols and Smith on two occasions—on November 24, 2015 and March 10, 2016—however, "explaining that the Divorce Decree and Special Warranty Deed did not release Smith from his obligations under the terms of the Note." Def.'s Br. 9 (citing 78-79 Def.'s App., Ex. A-6; 97-98 Def.'s App., Ex. A-9); *see also* Am. Compl. 2-3. Accordingly, Wells Fargo avers that Nichols and Smith both remain obligors under the Note. Def.'s Br. 9.

Borrowers failed to make their required payment on March 1, 2015. Def.'s Br. 10; 5 Def.'s App., Ex. A; *Id.* Ex. A-4. And they failed to make each subsequent payment due thereafter. *Id.* Wells Fargo therefore sent Borrowers Notices of Default and Intent to Accelerate on October 27, 2015. 104-27 Def.'s App., Ex. B-1. According to Wells Fargo, the amount due and owing on the Note was $178,108.99, as of September 1, 2020. Def's Br. 17. This amount increases approximately $500 per month for each month after October 1, 2020. *Id.*

---

[2] In sworn affidavits addressed to Wells Fargo, Smith denies ever signing a Special Warranty Deed and accuses Nichols of forging his signature. 81 Def.'s App., Ex. A-7; 83 Def.'s App., Ex. A-8.

3

Nichols then filed several actions against Wells Fargo to prevent foreclosure. The Court granted Wells Fargo's motions to dismiss in the first two cases filed by Nichols—the second time with prejudice. *See Nichols v. Wells Fargo Bank, N.A.*, 3:17-cv-02096-M-BH, 2018 WL 2164524, at * 6 (N.D. Tex. Apr. 6, 2018), *rec. adopted*, 2018 WL 2150993 (N.D. Tex. May 10, 2018); *Nichols v. Wells Fargo Bank, N.A.*, 3:16-cv-02654. Nichols then sued Wells Fargo for a third time in August 2018, alleging wrongful disclosure and other various claims (the "Prior Lawsuit"). Def.'s Br. 1 n.1; Pl.'s Resp. 2; *see also Nichols v. Wells Fargo Bank, N.A.*, 3:18-cv-02184-B.

In June 2019, Nichols and Wells Fargo reached an agreement in which Nichols would dismiss the Prior Lawsuit in exchange for loan modification review and $250 (the "Settlement Agreement"). Def.'s Br. 10; *see* 265-315 Def.'s App., Exs. C-1 & C-2 (Settlement Agreement); Pl.'s Resp. 2. Under the terms of the Settlement Agreement, Nichols had until July 21, 2019 to submit a complete loan modification application to Wells Fargo. Def.'s Br. 10, *see* Settlement Agreement 270. Even if Wells Fargo denied this application, Nichols agreed not to "take any action to delay, hinder, oppose, and/or interfere with the foreclosure of the Property." Def.'s Br. 10; Settlement Agreement 270-71.

Nichols did not submit a loan modification application by the deadline, however, prompting Wells Fargo to send Notices of Acceleration/Notices of Sale to Borrowers on July 25, 2019. Def.'s Br. 10; 101 Def.'s App., Ex. B (Forster Declaration); 129-260 Def.'s App. Ex. B-2 (Notices of Acceleration). Wells Fargo

4

further scheduled a foreclosure sale for October 1, 2019. *See* Am. Compl. 6-7 (referencing Wells Fargo's "threatened foreclosure sale"); Def.'s Br. 10; Notices of Acceleration 130, 136.

Thereafter, Nichols filed the present action in Texas state court seeking a temporary restraining order (TRO) prohibiting Wells Fargo from conducting the scheduled foreclosure sale. *See* Notice Removal, Ex. C-2, 2 (Original Pet.) (ECF No. 1-5). The state court granted Nichols's request and issued a TRO on October 1, 2019. Notice Removal, Ex. C-3, 3-4 (ECF No. 1-6) (TRO). Wells Fargo then answered Nichols's Original Petition, *see* Notice Removal, Ex. C-5 (Original Answer) (ECF No. 1-8), before timely removing the case to this Court on October 10, 2019. *See* Notice Removal 1 (ECF No. 1).

On May 22, 2020, Nichols amended her Complaint. *See* Am. Compl. She now alleges only two causes of action: breach of the Settlement Agreement and fraudulent inducement. Am. Compl. 5. Specifically, Nichols claims that Wells Fargo breached the Settlement Agreement by preventing her from submitting a loan modification application on time. Pl.'s Resp. 2, 4. Nichols alleges the loan modification application—attached to the Settlement Agreement by Wells Fargo— required her to list a "hardship" that made repayment of the Loan difficult. *Id.* Nichols, however, claims that this prerequisite was not applicable to her circumstance, as she "has always been able to pay her mortgage." Am. Compl. 3; Pl.'s Resp. 2, 4. Wells Fargo's conduct also amounted to fraudulent inducement, according to Nichols, as she supposedly relied on Wells Fargo's "false

5

representations" promising loan modification review when Wells Fargo had no intention of providing a good faith review. Pl.'s Resp. 5.

Nichols therefore asks that the Court grant her actual damages due to: (1) loss of equity in the Property if Wells Fargo is permitted to foreclose; (2) lost time spent fighting foreclosure; (3) the payment of improper fees, expenses, and charges; and (4) mental anguish damages connected to Wells Fargo's threats to foreclose. *Id.* at 6-7. Wells Fargo timely answered Nichols's Amended Complaint (ECF No. 31).

Shortly after removal, Wells Fargo filed counterclaims against Nichols and a Third-Party Complaint against Smith (ECF No. 20). Wells Fargo first alleges that Nichols breached the Settlement Agreement by seeking to prevent the foreclosure of the Property. Counterclaim & Third-Party Compl. 5. Due to this breach and the Borrowers' default, Wells Fargo seeks (1) entry of an order of judicial foreclosure, including its debt, damages, and costs; (2) a writ of possession issued against Nichols, Smith, and anyone else claiming an interest in the Property; and (3) a declaratory judgment awarding Wells Fargo its reasonable and necessary attorneys' fees and costs. *Id.* at 5-6. Both Nichols (ECF No. 26) and Smith (ECF No. 24) filed answers to Wells Fargo's counterclaims and Third-Party Complaint.

Wells Fargo then filed its pending Motion for Summary Judgement requesting that the Court dismiss Nichols's claims in their entirety and enter judgment in favor of Wells Fargo on its counterclaims and third-party claims for breach of contract, judicial foreclosure, and writ of possession. *Id.* at 3. Nichols

filed a response (ECF No. 41), but no appendix or other evidence, and Wells Fargo replied (ECF No. 42). While Smith did not respond to Wells Fargo's Motion, he included in his affidavit to Wells Fargo his desire for foreclosure to commence "as soon as possible." 81 Def.'s App., Ex. A-7; 83 Def.'s App., Ex. A-8. Regardless, the time to file a response has passed. Accordingly, Wells Fargo's Motion for Summary Judgment is ripe for determination.

## Legal Standard

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment bears the initial burden of showing the absence of a genuine issue for trial. *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (citations omitted). The movant's burden can be satisfied by demonstrating that there is an absence of evidence to support the nonmoving party's case, which the nonmovant bears the burden of proving at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). With respect to claims or defenses upon which the movant bears the burden of proof at trial, the movant "must establish 'beyond peradventure all of the essential elements of the claim.'" *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) (quoting *Fontenot v. Upjohn Co.*, 78 F.2d 1190, 1194 (5th Cir. 1986)). This means the movant must demonstrate there are no genuine and material disputes and that it is entitled to summary judgment as a matter of law. *Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003).

Once the movant meets its initial burden, the nonmovant must show that summary judgment is not proper. *Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir. 1992). The parties may satisfy their respective burdens "by tendering depositions, affidavits, and other competent evidence." *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992) (citing *Int'l Shortstop, Inc. v. Rally's*, 939 F.2d 1257, 1263 (5th Cir. 1991); FED. R. CIV. P. 56(e)). All evidence must be viewed in the light most favorable to the party opposing the summary judgment motion. *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993) (citing *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986)).

The party opposing the summary judgment motion must identify specific evidence in the record and state the precise manner in which that evidence supports the party's claim. *Esquivel v. McCarthy*, 2016 WL 6093327, at *2 (N.D. Tex. Oct. 18, 2016) (citing *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1988)). "Rule 56 does not impose a duty on the court to 'sift through the record in search of evidence' to support the nonmovant's opposition to the motion for summary judgment." *Id.* (citing *Ragas*, 136 F.3d at 458; *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992)).

## Analysis

I. <u>Wells Fargo is entitled to summary judgment on both of Nichols's claims.</u>

    a. <u>There is no genuine issue of material fact regarding damages on Nichols's claim for breach of contract.</u>

8

Wells Fargo first seeks summary judgment on Nichols's claim for breach of contract. Texas courts have identified four essential elements of a breach of contract claim: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Valero Mktg. & Supply Co. v. Kalama Int'l*, 51 S.W.3d 345, 351 (Tex. App.—Houston [1st Dist.] 2001, no pet.) (emphases removed); *see also Landrum v. Devenport*, 616 S.W.2d 359, 361 (Tex. App.—Texarkana 1981, no writ).³ Among other things, Wells Fargo argues it is entitled to summary judgment on Nichols's claim because she failed to adduce evidence that she sustained damages as the result of any alleged breach.

Nichols asserts in her Amended Complaint that Wells Fargo's alleged breach of the Settlement Agreement and repeated efforts to foreclose on the Property have caused actual damage in four ways: (1) loss of equity in the Property if Wells Fargo is permitted to foreclose; (2) lost time spent fighting foreclosure; (3) the payment of improper fees, expenses, and charges; and (4) mental anguish damages connected to Wells Fargo's threats to foreclose. Am. Compl. 6-7. In her response to Wells Fargo's summary judgment motion, she argues that "[her] pleadings set forth facts to raise a question of fact . . . if [Nichols] was damaged." Pl.'s Resp. 7. But, as the nonmovant, Nichols cannot survive a motion for summary judgment by

---

³ When a court exercises diversity jurisdiction, as it does here, it is bound to apply the law as would a Texas Court. *US Bank N.A., Tr. to LaSalle Bank Nat'l Ass'n v. Parson*, 2020 WL 7295838, at *6 (N.D. Tex. Nov. 20, 2020) (Rutherford, J.) (citing *Eerie R. Co. v. Tompkins*, 304 U.S. 64 (1938); *Charalambopoulos v. Grammer*, 2017 WL 606639, at *12 (N.D. Tex. Feb. 15, 2017) (Fitzwater, J.)).

merely resting on the *allegations* in her pleadings. *Isquith for and on behalf of Isquith v. Middle South Utils., Inc.*, 847 F.2d 186, 199 (5th Cir. 1988). Rather, she must identify specific *evidence* in the record and articulate how that *evidence* supports her claim. *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014). Conclusory allegations and unsubstantiated assertions will not satisfy her burden. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). Nichols fails to point to any evidence of damages resulting from a breach of contract. For this reason alone, Wells Fargo is entitled to summary judgment on her breach of contract claim.

But also, under Texas law, there are no damages recoverable under a breach of contract claim in the context of foreclosure if there is no foreclosure sale and the property owner maintains title and continuous possession of the property. *Robinson v. Wells Fargo Bank N.A.*, 2020 WL 7010043, at *3 (N.D. Tex. Oct. 15, 2020) (Rutherford, J.) *(citing Peoples v. BAC Home Loans Servicing, LP*, 2011 WL 1107211, at *4 (N.D. Tex. Mar. 25, 2011)) (holding plaintiff failed to allege damages for breach of contract where no foreclosure occurred, she remained in continuous possession and occupation, and title remained in her name); *see also Spraggins v. Caliber Home Loans, Inc.*, 2020 WL 8366645, at *10 (N.D. Tex. Dec. 31, 2020) (Rutherford, J.), *rec. adopted*, 2021 WL 311869 (N.D. Tex. Jan. 29, 2021). A claim for attorneys' fees does not salvage a breach of contract cause of action in such a circumstance, as the Supreme Court of Texas would not characterize attorneys' fees as damages "if they were subsequently incurred prosecuting a breach of

10

contract claim." *Vianet Grp. PLC v. Tap Acquisition, Inc.*, 2016 WL 4368302, at *9 (N.D. Tex. Aug. 16, 2019) (citing *Haubold v. Med. Carbon Rsch. Inst., LLC*, 2014 WL 1018008, at *1 (Tex. App.—Austin Mar. 14, 2014, no pet.)).

There is no dispute in this case that Wells Fargo never foreclosed on the Property, or that Nichols remains in possession of, and currently occupies, the Property. 337 Def. App. (RFA No. 5). Indeed, Nichols obtained a TRO from the state court cancelling the foreclosure sale scheduled for October 1, 2019. TRO 2-4. Nichols therefore cannot meet her burden to show she suffered damages. Accordingly, the Court should grant Wells Fargo summary judgment on Nichols's breach of contract claim.

> b. <u>Nichols's fraudulent inducement claim is similarly devoid of evidentiary support.</u>

Nichols alleges that Wells Fargo induced her into entering the Settlement Agreement by making false representations. Pl.'s Resp. 5. Specifically, Nichols claims that Wells Fargo never intended to consider her for a loan modification in good faith; it merely "wanted to get out of the [Prior] Lawsuit." *Id.* Wells Fargo moves for summary judgment on the ground that there is no evidence to establish the elements of a fraudulent inducement claim.

Because "[f]raudulent inducement is a particular species of fraud that arises only in the context of a contract and requires the existence of a contract as part of its proof," to succeed on a fraudulent-inducement claim, a plaintiff must establish "the elements of fraud . . . as they relate to an agreement between the parties."

11

*Coastal Bank SSB v. Chase Bank of Tex., N.A.*, 135 S.W.3d 840, 843 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (citing *Haase v. Glazner*, 62 S.W.3d 795, 798-99 (Tex. 2001)). There are six elements of common law fraud under Texas law: "(1) a material misrepresentation; (2) that is false; (3) made with knowledge of its falsity or recklessness as to its truth; (4) made with the intention that it should be acted upon by another party; (5) relied upon by the other party, and (6) causing injury." *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 212-13 (5th Cir. 2009) (citing *Jag Media Holdings Inc. v. A.G. Edwards & Sons Inc.*, 387 F. Supp. 2d 691, 709 (S.D. Tex. Sept. 17, 2004); *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001)).

In this case, Nichols fails to identify a single fraudulent representation made by Wells Fargo during settlement negotiations in 2019—much less adduce evidence of such a representation. *See* 344 Def. App. (Resp. to Int. No. 8) (admitting "[Nichols] did not keep a diary or ledger of [the fraudulent representations alleged in the Amended Complaint]" and providing vague descriptions of communication with Wells Fargo in 2014 and 2016). Further, she provides nothing more than her unsubstantiated allegation that Wells Fargo secretly harbored bad faith. Such rank speculation is insufficient to create a fact question.[4] *See Arisma Grp., LLC v. Trout & Zimmer, Inc.*, 2009 WL 3573418, at

---

[4] Again, Nichols appears to misunderstand her burden on summary judgment. In her response, she argues Wells Fargo is not entitled to summary judgment because "[her] pleadings are sufficient to state a cause of action for fraudulent inducement." Pl.'s Resp. 4. But this is inapposite. To survive summary judgment, Nichols must identify specific evidence in the record and state the precise manner in which that evidence

*7 (N.D. Tex. Oct. 30, 2009) (concluding that the plaintiff's only "'evidence'" of fraudulent inducement consisted of speculation and conclusory statements, thus entitling the defendant to judgment as a matter of law)

Nichols's failure to proffer anything more than mere conjecture in support of her fraudulent inducement claim is fatal to her claim. Accordingly, the Court should grant Wells Fargo summary judgment on Nichols's fraudulent inducement claim.

II. <u>Wells Fargo is entitled to summary judgment on its counterclaims and third-party claims.</u>

a. <u>Nichols clearly breached the Settlement Agreement without excuse.</u>

As stated, the essential elements of a breach of contract claim are: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Valero Mktg. & Supply Co.*, 51 S.W.3d at 351. In this case, neither party disputes that the Settlement Agreement was a valid contract. And in support of its motion, Wells Fargo adduces evidence that it performed under the Settlement Agreement by transferring Nichols $250 and providing her with a loan modification application. Def. App., Ex. 1-3. Nichols, however, failed to submit a completed application and breached the Settlement Agreement when she sought, and obtained, a TRO to halt the October 1, 2019 foreclosure sale, in violation of the provision that prohibited her from "tak[ing] any

---

supports her claim. *Esquivel*, 2016 WL 6093327, at *2.

action to delay, hinder, oppose, and/or interfere with" foreclosure of the Property. Settlement Agreement 270, ¶ 3; Def. App. 261. Wells Fargo also adduced evidence that this breach prevented it from conducting a foreclosure sale, thus causing it damage because the Loan remains in default. 6 Def.'s App., Ex. A.

Nichols argues that her violation of the prohibition on trying to delay foreclosure was excused because Wells Fargo prevented her from performing under the Settlement Agreement. Pl.'s Resp. 4. Specifically, Nichols contends that the loan modification application form Wells Fargo attached to the Settlement Agreement "included a requirement of a 'hardship' [sic] which was not applicable to [her] circumstance." Am. Compl. 2. She contends that Wells Fargo intended for her to "make untrue statements in support of her loan documents." *Id.* But this assertion is belied by the record.

The "Mortgage assistance application" attached to the Settlement Agreement—one of several documents required for loan modification—consists of eleven pages. *See* Settlement Agreement, Ex. 3 at 287-97. Included in this application is the "Hardship affidavit" to which Nichols refers. *See id.* at 294-95. Applicants are prompted to identify a hardship that has made repayment of a mortgage difficult from a predetermined list or explain an alternative reason in a box labeled, "Other." *See id.* at 294-95. But Nichols provides no evidence that Wells Fargo *required* her to have experienced any alleged hardship. Accordingly, there is no evidence that Nichols's failure to timely submit a complete loan modification

14

application was excused. Wells Fargo is entitled to summary judgment on its counterclaim against Nichols for breach of contract.

      b. <u>Wells Fargo is entitled to judicial foreclosure and a writ of possession.</u>

To obtain a judicial foreclosure, a security interest holder must demonstrate that: "(1) a debt exists; (2) the debt is secured by a lien created under Art. 16, § 50(a)(6) of the Texas Constitution; (3) [the borrowers] are in default under the note and security instrument; and (4) [the borrowers] received notice of default and acceleration." *Huston v. U.S. Bank Nat'l Ass'n*, 988 F. Supp. 2d 732, 740 (S.D. Tex. Dec. 19, 2013) (citing Tex. Prop. Code § 51.002), *aff'd*, 583 F. App'x 306 (5th Cir. 2014).

Wells Fargo has established these elements by its summary judgement evidence. First, it has shown that a debt exists by providing a copy of the Note and the Security Instrument evidencing an extension of credit to Nichols and Smith in favor of the Original Lender. Note 9; DOT 12. Wells Fargo has further established that it is entitled to collect the debt by providing the Corporate Assignment of DOT, transferring the security from the Original Lender to Wells Fargo. Assignment 25.

Moreover, Wells Fargo has substantiated that the debt is secured by a lien created under Art. 16, § 50(a)(6) of the Texas Constitution for home equity loans. It includes in the Appendix to its Motion a copy of the security instrument that was filed in the official Dallas County real property records. DOT 23. This security instrument creates a first lien mortgage on the Property and authorizes foreclosure in the event of a default. *Id.* at 1-2; 18. Neither Nichols nor Smith contests this

evidence or the nature of the lien. Wells Fargo has therefore met its burden as to this element. *See Huston*, 988 F. Supp. 2d at 740-41.

Wells Fargo has also established that Nichols and Smith are in default. The summary judgment evidence reflects that the Borrowers have failed to make payments under the Note since March 2015, and that the total amount due as of September 1, 2020 was $178,108.99—increasing approximately $500 per month for each month after October 1, 2020 to account for interest. Def.'s Br. 17. Finally, Wells Fargo has shown that both Nichols and Smith received notice of default and acceleration by providing evidence that foreclosure counsel for Wells Fargo sent Nichols and Smith Notices of Default and Intent to Accelerate on October 27, 2015, informing them of the default and the amount required to cure. 104-27 Def.'s App., Ex. B-1. Wells Fargo has further provided evidence that its foreclosure counsel sent Nichols and Smith Notices of Acceleration/Notices of Sale to Borrowers on July 25, 2019, which accelerated the Loan. Def.'s Br. 10; Forster Declaration 101; Notices of Acceleration 129-260.

Smith did not file a response to Wells Fargo's summary judgment motion; nor does he contest that the summary judgment evidence establishes that Wells Fargo is entitled to foreclose. Indeed, the record includes a copy of an affidavit Smith provided to Wells Fargo expressing his desire for foreclosure to commence "as soon as possible." 81 Def.'s App., Ex. A-7; 83 Def.'s App., Ex. A-8.

For her part, Nichols responds that Wells Fargo is not entitled to judicial foreclosure because: (1) it first "elected to pursue non-judicial foreclosure," thus

16

precluding any resort to judicial foreclosure now; and (2) a foreclosure sale through a judicial order of foreclosure "would usurp [Nichols's] rights to reinstate under the Deed of Trust without due process." Pl.'s Br. 5. Neither assertion is availing.

First, Wells Fargo's initial attempts to foreclose on the Property—thwarted by Nichols's TRO—do not preclude Wells Fargo from pursuing judicial foreclosure now. Nichols does not contend that Wells Fargo is currently seeking the remedy of non-judicial foreclosure. Therefore, Nichols's reliance upon its sole authority cited, *Coffman v. Brannen*, 50 S.W.2d 913 (Tex. App.—Amarillo 1937, no writ), is misplaced.

In *Coffman*, the plaintiff simultaneously brought suit for judicial foreclosure and conducted a non-judicial foreclosure sale. *Id.* at 914. The Texas state court reasoned that under the election of remedies doctrine, the plaintiff's requested relief consisted of inconsistent remedies that could not exist concurrently. *Id.* at 914-15. However, there is authority within this Circuit that suggests "the election doctrine, which bars relief when a party requests two or more remedies which are so inconsistent as to constitute manifest injustice," does not bar summary judgment when a party seeks a judgment allowing foreclosure "in accordance with [a] deed of trust . . . or alternatively, through judicial foreclosure." *Mitchell v. Ocwen Loan Servicing*, 2018 WL 10335466, at *2 (N.D. Tex. Feb. 22, 2018) (internal quotation marks omitted) (citing *Bocanegra v. Aetna Life Ins. Co.*, 605 S.W.2d 848, 851 (Tex. 1980)). Indeed, these remedies are not inconsistent. *Id.; see*

17

*also In re Erickson*, 566 F. App'x 281, 284 (5th Cir. 2014) (per curiam) (citing *Thurman v. Fed. Deposit Ins. Corp.,* 889 F.2d 1441, 1445 (5th Cir.1989); *Kaspar v. Keller,* 466 S.W.2d 326, 328 (Tex.Civ.App.—Waco 1971); *Am. Nat'l Ins. Co. v. Schenck,* 85 S.W.2d 833, 839 (Tex.Civ.App.—Amarillo 1935)) ("Both this court and the Texas Courts of Appeals have held that judicial foreclosure and the ability . . . to foreclose under the power of sale in a deed of trust are separate and distinct remedies. . . .").

Regardless, in this matter, Nichols does not allege that Wells Fargo is simultaneously seeking judicial foreclosure while also conducting a non-judicial foreclosure sale. After Nichols obtained a TRO halting the foreclosure sale scheduled for October 2019, Wells Fargo has only sought judicial foreclosure of the Property. Accordingly, Wells Fargo's counterclaim and third-party claim for judicial foreclosure is not barred.

Second, Nichols cites no authority for her argument that granting an order of judicial foreclosure would usurp her rights to reinstate under the DOT without due process. Additionally, Nichols argues that an order of judicial foreclosure "would be contrary to the guidelines and requirements of [the Department of Housing and Urban Development (HUD)]." *Id.* at 6. But Nichols does not explain how a judicial order of foreclosure would run afoul of HUD guidelines. She fails to point to any evidence of a HUD guideline or regulation that is inconsistent with an order of foreclosure under the circumstances presented here. Accordingly, Nichols

fails to raise a genuine issue of material fact regarding the validity of an order of judicial foreclosure.

Because Wells Fargo has established the elements for judicial foreclosure by its summary judgment evidence, and neither Nichols nor Smith can point to a genuine issue for trial, the Court should also GRANT Wells Fargo's Motion as to its judicial foreclosure and writ of possession counterclaim. *See Dietech Fin., L.L.C. v. Naumann*, 742 F. App'x 810, 815 (5th Cir. 2018) (per curiam) (unpublished) ("Texas's process of enforcing a judicial foreclosure—and specifically its mechanism for enforcing the foreclosure sale—entails issuance of the writ [of possession].").

## RECOMMENDATION

For the reasons stated, the Court should GRANT Defendant Wells Fargo's Motion for Summary Judgment (ECF No. 38) and enter a final judgment for an order authorizing Wells Fargo to foreclose on the Property. The Court should direct Wells Fargo to submit a proposed final judgment and order of foreclosure within 14 days after being served with a copy of these findings, conclusions, and recommendation.

**SIGNED**.

August 18, 2021.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).